IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| WALMART STORES TEXAS LLC, *Plaintiff*, | § § § § § § § § § § § | |
| v. | | |
| DAVID R. PETE, *Defendant*. | | CIVIL ACTION NO. 1:23-CV-251-MJT-CLS |

**REPORT AND RECOMMENDATION ON PLAINTIFF'S
OPPOSED MOTION TO DISMISS ARBITRATION PROCEEDING (Doc. #7)**

Pursuant to 28 U.S.C. § 636 and the Local Rules of Court for the Assignment of Duties to United States Magistrate Judges, the district court referred this proceeding to the undersigned United States magistrate judge to conduct all pretrial proceedings, to enter findings of fact and recommend disposition on case-dispositive matters, and to determine non-dispositive matters. *See* 28 U.S.C. § 636(b)(1); E.D. Tex. Civ. R. 72.  Pending before the court is Walmart Stores Texas, LLC's Opposed Emergency Motion to Stay and Dismiss Arbitration Proceeding [hereinafter "Motion to Stay and Dismiss Arbitration"]. (Doc. #7.)

### I. Procedural History

Plaintiff filed suit on July 3, 2023, seeking (1) a declaration that no agreement to arbitrate exists between Plaintiff and Defendant for claims that may arise from the factual allegations asserted in Defendant's Demand for Arbitration, (2) a stay and then dismissal of the arbitration proceeding currently pending under AAA Cause No. 01-23-0001-6617 [hereinafter "Arbitration Proceeding"], and (3) recovery for "costs, expenses and attorney's fees." (Doc. #1.)  On August 18, 2023, Plaintiff filed the Emergency Motion to Stay and Dismiss Arbitration.  (Doc. #7.)

Defendant filed a response to the motion on August 21, 2023. (Doc. #8.) On August 24, 2023, the undersigned granted the emergency motion as to the stay, but deferred judgment on the dismissal of arbitration pending a hearing. The undersigned held a hearing on the dismissal of arbitration on September 5, 2023. (Doc #14.) The matter is now ripe for review.

**II. Factual Background**

According to the record, on May 2, 2020, Defendant was waiting in a line to enter the Walmart store at 4145 Dowlen Rd. in Beaumont, Texas. (Doc. #7-3 at 1.) According to Defendant, he asked the manager to "engage in conversation about the line and immediately it turn[ed] into a debate and then [the manager] told [Defendant] to leave without reason." (*Id.*) Police then confronted Defendant. (*Id.*) Defendant was allegedly in "fear for [his] life." (*Id.*) Defendant then called the Walmart corporate office to file a complaint. (*Id.*) Throughout the summer of 2020, Defendant claims he exchanged numerous emails with various workers at Walmart's corporate office about the incident and how he was now afraid to go to any Walmart store. Complaint at 1, *Pete v. McMillon, et. al.*, No. 1:22-CV-30 (E.D. Tex. Jan. 26, 2022).

On July 26, 2022, Defendant filed suit in this court against Doug McMillion, President & CEO of Walmart Corp, Kathryn Mclay, President & CEO of Sam's Club, and Donna Moris, Executive Vice President & Chief People Officer of Walmart. *Id.* Defendant alleged Walmart violated his constitutional rights under the First and Fourteenth Amendment. (Doc. #7-5.) After Defendant repeatedly failed to remedy his complaint, Magistrate Judge Zack Hawthorn recommended that the case be dismissed without prejudice. (*Id.*) Judge Marcia Crone adopted the recommendation and dismissed Defendant's case on May 19, 2022. (Doc. #7-4.) Defendant then filed an unsuccessful appeal before the Fifth Circuit Court of Appeals that was dismissed on August 2, 2022. (Doc. #1 at ¶ 4.)

Sometime after his case was dismissed, Defendant discovered the website Walmart.com's "Terms of Use." (Docs. #s 7-2, 14.)  Section 20, Part 1 of Walmart.com's Terms of Use is a broad arbitration clause that claims to subject to arbitration "all disputes arising out of or related to these terms or use *or any aspect of the relationship between you and Walmart*, including any products or services sold by Walmart or the Walmart Entities."  (Doc. #7-2 at 17) (emphasis added.)  The Terms of Use defines Walmart as "Wal-Mart.com USA, LLC and Walmart, Inc., and any subsidiaries of Wal-Mart Stores, Inc (including any subsidiaries that Walmart Inc. may form or acquire in the future), and their affiliates, directors, officers, employees, and agents." (*Id.* at 2.)

According to Plaintiff, Defendant attempted to initiate arbitration with Plaintiff before American Arbitration Association (hereinafter "AAA") sometime after his federal court case was dismissed, but the AAA initially dismissed his Demand for Arbitration.  (Doc. #1 at ¶ 4.)  Then, on May 5, 2023, over three years since the incident at the Walmart store in Beaumont, Defendant filed his current Demand for Arbitration under the Consumer Arbitration Rules of the AAA. (Doc. #7-3.)  The arbitration demand concerned the events of May 2, 2020, and contained identical language to his initial complaint in the case 1:22-cv-30.  (*Id.*)  Defendant also attached the Terms of Use from Walmart.com to his complaint.  (Doc. #1 at ¶ 4.)

The arbitration clause in the Terms of Use apparently persuaded the AAA to allow the proceeding (AAA Cause No. 01-23-0001-6617) to go forward.  Plaintiff filed objections to the arbitration with AAA.  The AAA appointed an arbitrator and Plaintiff was ordered to pay a filing fee related to the arbitration proceeding.  (Doc. #14.)  On July 3, 2023, Plaintiff filed its first complaint in this case seeking the relief at issue here.  (Doc. #1.)

3

### III. Legal Standard

    A. <u>Dismissing Arbitration</u>

The Federal Arbitration Act does not provide guidelines for when and how a court should terminate arbitration proceedings of private arbitration providers. However, federal courts addressing the issue have dismissed arbitration proceedings or entered analogous orders when arbitration contracts were waived or otherwise invalid. *See, e.g.*, *Leal v. Luxottica Retail N. Am., Inc.*, 3:10-CV-2044-B, 2011 WL 873348, at *2 (N.D. Tex. Mar. 10, 2011) (finding plaintiff waived his contractual right to arbitration and ordering plaintiff dismiss his arbitration demand before the American Arbitration Association); *Kambala v. Checchi and Co. Consulting, Inc.*, 1:17-CV-00451 (APM), 2017 WL 4564731, at *2 (D. D.C. May 4, 2017) (finding plaintiff waived his contractual right to arbitration, enjoining arbitration proceedings, and ordering the plaintiff "immediately withdraw the arbitration demand pending before the American Arbitration Association"); *Horizon Plastics, Inc. v. Constance*, 00 Civ. 6458 (RCCC), 2004 WL 1234049, at *4 (S.D.N.Y. June 2, 2004) (enjoining an arbitration proceeding and declaring that the parties had no agreement to arbitrate).

District courts have the authority to determine (1) whether a valid agreement to arbitrate exists between the parties, and (2) whether a given dispute falls within the scope of a valid arbitration agreement. *Pennzoil Expl. and Prod. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1065 (5th Cir. 1998); *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (2006). The latter determination may be subject to arbitration, as opposed to court review, but only if the arbitration agreement explicitly delegates that power to the arbitrator. *Allen v. Regions Bank*, 389 F. App'x 441, 446 (5th Cir. 2010) ("The parties must have clearly intended for issues of arbitrability to be arbitrated… [o]therwise, the scope of the arbitration agreement is for the court to decide").

4

B. <u>Declaratory Judgment Act</u>

The Declaratory Judgment Act grants district courts the authority to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a); *see Val–Com Acquisitions Trust v. Chase Home Fin.*, L.L.C., 434 F. App'x 395, 395 (5th Cir. 2011). Courts must have an independent basis for subject matter jurisdiction to issue declaratory relief, as the Act does not grant federal courts additional jurisdiction. *City of El Paso, Tex. v. El Paso Ent., Inc.*, 535 F. Supp. 2d 813, 819-20 (W.D. Tex. 2008), *aff'd*, 382 F. App'x 361 (5th Cir. 2010)

A declaration must resolve an "actual controversy between the parties." *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir.2000) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–40 (1937)). "An actual controversy is a dispute that is 'definite and concrete, touching the legal relations of parties having adverse legal interests.'" *Val—Com*, 434 F. App'x at 395 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation and internal quotation marks omitted)). Contract "formation, validity, construction and effect, performance or breach, and termination" are all valid subject matter for a declaratory judgment. *Full Gospel Baptist Church Fellowship Int'l v. Cap. One*, No. CIV.A. 12-2749, 2013 WL 950567 (E.D. La. Mar. 11, 2013) (quoting W.H. Beach, Annotation, *Application of Declaratory Judgment Acts to Questions in Respect of Contracts or Alleged Contracts*, 162 A.L.R. 756 (2012)). Plaintiff bears "the burden of establishing the existence of an actual controversy under the Act. *See Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009); *Young v. Vannerson*, 612 F.Supp.2d 829, 840 (S.D. Tex. 2009).

### C. Attorney's Fees

The American rule is that parties each pay their own litigation costs unless a statute or contract provides otherwise. *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 382 (2013). The Declaratory Judgment Act "does not by itself provide statutory authority to award attorney's fees that would not otherwise be available under state law in a diversity action." *Westchester Surplus Lines Ins. Co. v. Maverick Tube Corp.*, 722 F. Supp. 2d 787, 799 (S.D. Tex. 2010) (quoting *Mercantile Nat'l Bank v. Bradford Co.*, 850 F.2d 215, 218 (5th Cir. 1988)).

Courts may in rare and exceptional circumstances "award attorneys' fees in exercise of their equitable powers when interests of justice so require." *Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269, 274 (5th Cir. 2021) (internal quotations omitted) (citing *Hale v. Cole*, 412 U.S. 1, 5 (1973)). Assessing attorneys' fees may be appropriate "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Hammervold v. Blank*, 3 F.4th 803, 811 (5th Cir. 2021) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (cleaned up)).

## IV. Discussion

### A. Motion to Dismiss Arbitration

Plaintiff challenges the Arbitration Proceeding on both grounds explicitly reserved for district courts, arguing (1) that there is no valid arbitration agreement between Plaintiff and Defendant, and (2) if there was an agreement, the current dispute would fall outside the scope of the agreement. (Doc. #7.) The agreement contains no explicit provisions subjecting debates over arbitrability to the arbitrator. (Doc. #1-3 at 17-19.) After determining what law governs this dispute, the undersigned will address each question in turn.

*i. Choice of Law*

Courts "apply ordinary principles of state contract law" to determine whether parties have a valid arbitration agreement and whether a dispute falls within that agreement. *Savage SE Operations, LLC v. Wartsila N. Am., Inc.*, 496 F. Supp. 3d 1051, 1056 (S.D. Tex. 2020). A federal court sitting in diversity, as is the case here, applies the substantive law of the forum state. *Barden Miss. Gaming Ltd. Liab. Corp. v. Great N. Ins. Co.*, 638 F.3d 476, 478 (5th Cir 2011). State choice of law rules are substantive for diversity purposes. *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 770-71 (5th Cir. 2016). Accordingly, the undersigned will apply Texas choice of law rules.

Texas courts generally enforce contractual choice of law clauses, but do not apply those clauses to the threshold matter of whether a contract is valid. *Realogy Holding Corp. v. Jongebloed*, 957 F.3d 523, 531 fn. 11 (5th Cir. 2020). To address contract disputes, including those over formation, Texas applies the law of the state with the "most significant relationship to the transaction and the parties." *Klebba v. Netgear, Inc.*, 1:18-CV-438-RP, 2019 WL 453364, at *3 (W.D. Tex. Feb. 5, 2019) (*citing Maxus Expl. Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 53 (Tex. 1991)). The most-significant-relationship analysis in the context of contract disputes looks at the following factors: "(1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties." *Reddy Ice Corp. v. Travelers Lloyds Ins. Co.*, 145 S.W.3d 337, 344 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (citing *Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 953 S.W.2d 733, 735–36 (Tex. 1997)).

Here, the contract at issue is the Terms of Use on Plaintiff's website. (Doc. #1-3 at 2.) The record provides no information about the first three factors. The record does suggest that Plaintiff is a nationwide retailer incorporated in Arkansas, (doc. #1 at 1), Plaintiff operates stores in Texas, (*Id.* at 2), Plaintiff operates a website that is accessible nationwide, (doc. #1-3 at 2), Defendant is a Texas resident, (doc. #1 at 1), and the parties' relationship centered around a dispute in Texas. (Doc. #1 at 2.) In weighing the relevant factors, the undersigned finds that Texas substantive law applies to the issue of whether the parties have a valid arbitration agreement. If the agreement is valid, the court will apply the choice of law clause in the Terms of Use selecting Arkansas law to determine whether the current dispute falls under the arbitration agreement. (Doc. #1-3 at 19.)

### ii. Did the Parties Enter into a Valid Arbitration Agreement?

Under Texas law, the party looking to enforce an arbitration agreement has the burden to properly plead that the parties entered into a contract. *See StubHub, Inc. v. Ball*, No. 14-22-00844-CV, 2023 WL 5535838, at *7 (Tex. App.—Hous. [14th Dist.] Aug. 29, 2023). Regarding contracts formed on the internet, courts have found sufficient mutual assent to contracts where parties provided electronic signatures, a party clicked "accept" to terms and services, and the transaction at issue involved agreeing to online terms and services. *See Aerotek, Inc. Boyd*, 624 S.W.3d 199, 200 (Tex. 2021*); Martinez v. Affordable Seating, Inc.*, No. 13-16-00103-CV, 2016 WL 6124129, at *3 (Tex. App.—Corpus Christi Oct. 20, 2016). However, the mere allegation that one created an account and signed into a website does not mean that the party is bound by the website's arbitration clause. *StubHub*, 2023 WL 5535838, at *7 (finding StubHub failed to plead the defendant was bound by "online User Agreement" where "[t]here was no description of each affirmative step [the defendant] had to take to complete the registration process; there was

no evidence of the screenshots that [the defendant] would have seen when he registered his account; and there was no explanation of the text that was presented to [the defendant]").

Defendant fails to show there was an agreement to arbitrate with Plaintiff. Defendant's only alleged interaction with Plaintiff's website in the record is that he accessed the website to view the terms of use, not in an effort to make a purchase, but simply to claim an arbitration agreement exists between the parties. (Doc. #1-3 at 2.) Merely visiting the website does not mean the parties had mutual assent to contract. The Terms of Use suggest that one may visit Plaintiff's website and not consent to the Terms of Use.[1] During the hearing on September 5, 2023, (doc. #14), Defendant's only argument that he and Plaintiff agreed to arbitrate their dispute was that the arbitration clause was part of Plaintiff's website policies so Plaintiff should be held to it. That is insufficient under Texas law to establish that the parties entered into a contract or an agreement to arbitrate. Accordingly, the undersigned finds that Defendant failed to show the parties had an enforceable arbitration agreement.

### iii. Does the Dispute Fall Under the Arbitration Agreement?

As the parties did not enter into a valid arbitration agreement, the undersigned does not need to address the second question.

### B. Declaratory Relief

The current motion does not explicitly request declaratory relief. However, Plaintiff's operative complaint does request the court declare there was no agreement to arbitrate the May 2, 2020 dispute. (Doc. # 18.) As the ultimate relief requested is a declaratory judgment that there is no agreement to arbitrate, the undersigned recommends the court grant declaratory judgment that no contract was formed that would compel the parties to arbitrate claims arising from the

---

[1] The terms and services state "if you violate or do not agree to these Terms of Use, then your access to and use of Walmart Sites is unauthorized." (Doc. #1-3 at 2.) The potential for unauthorized use of the website implies visiting the website alone does not automatically create a contract.

events of May 2, 2020, that the arbitration proceeding should be enjoined, and Defendant be required to withdraw his claim in arbitration.

### C. Costs, Expenses, and Attorney's Fees

Plaintiff does not explain on what basis it requests "costs, expenses, and attorney fees." (Doc. #1 at 4.) As there is no contract between the parties requiring the payment of attorney's fees, the undersigned turns to two potential statutory sources of such relief: (1) the Declaratory Judgment Act, and (2) Texas contract law.

While not an independent basis for recovery of fees and costs, the Declaratory Judgment Act in diversity suits adopts the substantive remedies of analogous state statues. *Westchester Surplus Lines Ins. Co. v. Maverick Tube Corp.*, 722 F. Supp. 2d 787, 799 (S.D. Tex. 2010). However, the Fifth Circuit has held that the Texas Declaratory Judgment "was procedural and did not provide a basis for a fee award." *Id.* (citing *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 210 (5th Cir. 1998)); *see Philadelphia Indem. Ins. Co. v. SSR Hosp., Inc.*, 459 F. App'x 308, 315-16 (5th Cir. 2012) (holding Defendant could not recover attorney's fees relating to the Texas Declaratory Judgment Act but could recover portion of fees related to portion of lawsuit with federal statutory grant of such relief).

Texas state law allows a party to seek attorney's fees if the claim is for, among other things, "an oral or written contract." TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (West). However, attorney's fees are only mandatory when there is a breach of an oral or written contract. *See Welch v. Hrabar*, 110 S.W.3d 601, 610 (Tex. App.—Hous. [14th Dist.] 2003). Here, there is no contract. Likewise, the party requesting attorney's fees must "present" to the opposing party a demand or request for payment or performance. *See Note Inv. Grp., Inc. v.*

10

*Assocs. First Cap. Corp.*, 476 S.W.3d 463, 485 (Tex. App.—Beaumont 2015).  Again, there is no contract here and Plaintiff fails to plead the procedural prerequisites for attorney's fees.

The only remaining ground for attorney's fees is the court's equitable powers.  The undersigned sees no reason to depart from the American rule.  The undersigned is concerned about Defendant's actions in filing an arbitration of a previously dismissed claim, but without more the undersigned does not recommend the award of fees or costs.

### V. Conclusion

The undersigned finds that Defendant has not sufficiently demonstrated that there is a valid agreement to arbitrate any dispute between the parties.

### VI. Recommendations

For the foregoing reasons, the undersigned recommends that Plaintiff's Motion to Dismiss Arbitration (doc. #7) be **GRANTED**.  Defendant should be **ORDERED** to **WITHDRAW** his Arbitration Demand for the arbitration proceeding under AAA Cause No. 01-23-0001-6617, and that proceeding should be **PERMANENTLY ENJOINED**.

The undersigned further recommends that **DECLARATORY JUDGMENT** be **ENTERED** finding that the parties had no agreement to arbitrate the dispute in question, and that Plaintiff's request for attorney's fees and other costs be **DENIED**.

### VII.     Objections

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).  To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is

found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this the 2nd day of October, 2023.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE